UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALLEN BERNEL,

                                        Plaintiff,

        v.

YELENA KOROBKOVA, *et al.*,

                                        Defendants.

No.  21-CV-5106 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Allen Bernel
Fallsburg, NY
*Pro se Plaintiff*

Neil Shevlin, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants Yelena Korobkova, Diane Hinton, Josh Krom, and William Keyser*

KENNETH M. KARAS, United States District Judge:

        Allen Bernel ("Plaintiff") brings this Action, pursuant to 42 U.S.C. § 1983 ("§ 1983"),

against Facility Health Service Director Yelena Korobkova ("Korobkova"), Nurse John Doe,

"Nurse Practice" John Doe, Nurse Katheleen Buttles ("Buttles"), Nurse Practitioner Ifeoma

Awaka ("Awaka"), Facility Nurse Administrator Diane Hinton ("Hinton"), Deputy

Superintendent Administration Josh Krom ("Krom"), and Superintendent William F. Keyser

("Keyser"; Korobkova, Hinton, Keyser, and Krom, together, "Defendants"), alleging they were

deliberately indifferent to his medical needs.  (*See generally* Am. Compl. (Dkt. No. 16).)[1]

---

[1] Plaintiff spells Korobkova, "Korabova" and Krom, "Korn" in his Amended Complaint.
(*See generally* Am. Compl.)  Defendants Buttles and Awaka do not appear to have been served in
this Action.  (*See generally* Dkt.)

Before the Court is Defendants' Motion for Summary Judgment against Plaintiff for the claims brought in the Amended Complaint (the "Motion").  (*See* Decl. in Support of Mot. (Dkt. No. 47).)

For the reasons stated herein, the Motion is granted.

## I.  Background

A.  Factual Background

The following facts are taken from Defendants' statements pursuant to Local Civil Rule 56.1.  (Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 49).)  Additionally, where appropriate, the Court cites directly to the admissible evidence submitted by the Parties.  The facts as described below are in dispute to the extent indicated.[2]

---

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.* at 56.1(b).  "If the opposing party fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same).  "A pro se litigant is not excused from this rule."  *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (italics omitted).

Here, Defendants filed and served their statement pursuant to Rule 56.1, (*see* Defs.' 56.1), in addition to the requisite statement notifying Plaintiff of the potential consequences of not responding to the Motion as required by Local Rule 56.2, (*see* Not. to Pro Se Litigant (Dkt. No. 50)).  Despite this notice, Plaintiff failed to submit a response to Defendants' 56.1 Statement of Facts.  (*See generally* Dkt.)  Accordingly, the Court may conclude that the facts in Defendants' 56.1 Statement are uncontested and admissible.  *See Brandever*, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record"

2

Plaintiff is currently incarcerated by the New York State Department of Corrections and Community Supervision ("DOCCS") at Sullivan Correctional Facility ("Sullivan") and was incarcerated there during September 2020. (*Id.* ¶ 1.) During the time at issue in this case, Keyser was the Superintendent of Sullivan, however he has since retired from DOCCS. (*Id.* ¶ 2.) Krom is currently employed by DOCCS as the Deputy Superintendent of Administration at Sullivan, a position he has held since July of 2018. (*Id.* ¶ 3.) During the time at issue in this case, Korobkova was the Facility Health Services Director at Sullivan; she has since retired from DOCCS. (*Id.* ¶ 4.) During the time at issue in this case, Hinton was the Nurse Administrator at Sullivan; she has since retired from DOCCS. (*Id.* ¶ 5.)

Plaintiff's medical records show that on September 10, 2020, Plaintiff was seen by Buttles complaining of left shoulder pain as a result of falling on a wet floor. (*Id.* ¶ 6.) Buttles took Plaintiff's vital signs and noted that they were normal. (*Id.* ¶ 7.) Buttles noted that Plaintiff had no swelling or redness and that there was nothing odd about his appearance. (*Id.* ¶ 8.) Plaintiff was given an analgesic balm and 650 milligrams of Tylenol. (*Id.*) Buttles conferred with Awaka, who ordered Plaintiff an x-ray. (*Id.* ¶ 9.) Plaintiff testified he saw Buttles one

---

when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted). *See also Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund–Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) (italics omitted) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (citation and quotation marks omitted)).

additional time and that she told him that the pain he was feeling was not caused by the fall. (Shevlin Decl. Ex. A, at 25:2–11 (Dkt. No. 51-1).)

Following his interaction with Buttles, Plaintiff was seen that same day by Awaka, who noted that Plaintiff was ambulating without problem and that there was no redness or swelling. (Defs.' 56.1 ¶¶ 10–11.)  Given the possibility that Plaintiff had hit his head, "Awaka conducted a neurologic exam, noting that Plaintiff: (i) was alert and orientated in terms of knowing who he was, where he was, and what day it was; (ii) denied having a headache; (iii) presented with normal speech; (iv) had normal range of motion of all extremities; and (v) had no observable distress." (*Id.* ¶ 12.)  The medical entry indicated that Plaintiff had requested an x-ray of his left back and his head.  (*Id.* ¶ 13.)  The following day, on September 11, 2020, Plaintiff had an x-ray of his head, left shoulder, arm, and hand.  (*Id.* ¶ 14.)  The x-ray results showed that Plaintiff had not suffered a fracture to any of those body parts, including his head.  (*Id.* ¶ 15.)  Plaintiff appeared to have a bullet in his arm.  (*Id.* ¶ 16.)  According to the handwritten note on the bottom right of the x-ray report, the findings were reviewed by Korobkova on September 22, 2020.  (*Id.* ¶ 17.)  The next notation in Plaintiff's medical chart is from September 14, 2020, indicating that his medical provider had routinely re-filled the medications Plaintiff was then taking.  (*Id.* ¶ 18.)

Plaintiff on the other hand, testified that he fell on September 17, 2020.  (Shevlin Decl. Ex. A, at 31:24–35:12.)  Plaintiff testified that he tripped on a screw that was raised as he was exiting a bathroom and hit his hand, head, and shoulder on his left side and became unconscious. (*Id.* at 33:2–36:22.)  Plaintiff states that a code blue was called after he fell, (*id.* at 51:17–25), that he was then brought in a wheelchair to a clinic, and seen by Buttles who conducted an examination, (*id.* at 39:13–40:5.)  Plaintiff testified that during his visit with Buttles, he began to have chest pain and that Buttles gave him an ice pack and a Band-Aid, and told him if he had

more pain to "come to the window" and "put [in] your sick call." (*Id*. at 40:4–20.)  There is no medical entry for September 17, 2020, the date Plaintiff claims he fell, hit his head, and lost consciousness.  (Defs.' 56.1 ¶ 19.)  Once Plaintiff returned to his cell, he woke up in pain, could not get out of bed, and was told by an officer to put in for a sick call.  (Shevlin Decl. Ex. A, at 47:22–52:22.)  Plaintiff testified he "put in for sick call five times" and that he was given aspirin.  (*Id*. at 52:23.)

According to Plaintiff's medical records, he was next seen on September 22, 2020, complaining of dizziness and headache as a result of a "previous fall."  (Defs.' 56.1 ¶ 20.)  The nurse who saw the Plaintiff evaluated him by checking his orthostatic vital signs, which are evaluated when there is a possible head injury.  (*Id*. ¶ 21.)  This included checking Plaintiff's oxygen level, heart rate, and blood pressure (in a lying, standing, and sitting position), all of which were normal.  (*Id*.)  The nurse also noted that there were no signs or symptoms of acute distress, that Plaintiff's gait was steady, and that he was alert and orientated as to who he was, where he was, and what day it was.  (*Id*. ¶ 22.)  Immediately following Plaintiff's evaluation by a nurse, he was seen by Awaka as well as Korobkova.  (*Id*. ¶ 23.)  Awaka noted that Plaintiff's exam was within normal limits, palpitation of Plaintiff's scalp by the nurse was negative for bumps, and Plaintiff's range of motion appeared normal.  (*Id*. ¶ 24.)  Overall, it was noted that Plaintiff "appears well."  (*Id*.)  Plaintiff testified he requested an MRI from Awaka.  (Shevlin Decl. Ex. A, at 26:19–27:2.)

It was further noted in Plaintiff's medical record that Korobkova explained to Plaintiff that the x-ray results showed that he had no skull fracture.  (Defs.' 56.1 ¶ 25.)  Plaintiff was directed to follow up with medical during his next scheduled appointment.  (*Id*. ¶ 26.)  Plaintiff testified this was the only time he saw Korobkova.  (Shevlin Decl. Ex. A, at 20:25–21:3.)  The

record does not indicate that Plaintiff was provided medication for his headache on September 22, 2020, such as Tylenol.  (Defs.' 56.1 ¶ 27.)  However, the dispensing of Tylenol, an over-the-counter drug, is not always noted in an incarcerated individual's chart.  (*Id*. ¶ 28.)

According to his medical records, Plaintiff was next seen two days later, on September 24, 2020, complaining of bad headaches and requested to see "the Dr. for an MRI."  (*Id*. ¶ 29.)  In response, Plaintiff was prescribed 400 milligrams of ibuprofen two times per day for three days and was scheduled to see a nurse practitioner on October 1, 2020.  (*Id*. ¶ 30.)  While Plaintiff's next scheduled medical appointment was October 1, 2020, he was seen by Awaka on September 28, 2020.  (*Id*. ¶ 31.)  During that encounter, Plaintiff's pre-existing Asthma and Hypertension were checked and discussed with him.  (*Id*. ¶ 32.)  His vital signs were taken, which were normal.  (*Id*.)  Plaintiff was counseled to stop smoking and to decrease his salt intake.  (*Id*. ¶ 33.)  In response to Plaintiff's complaint of headache, neurological and eye exams were performed, which were normal.  (*Id*. ¶ 34.)  Plaintiff was scheduled for a routine EKG, blood work, and a follow-up appointment.  (*Id*. ¶ 35.)  His medications were renewed.  (*Id*.)  In response to Plaintiff's request to see Korobkova for an MRI, he was counseled that an MRI was not medically indicated at that time.  (*Id*. ¶ 36.)

Plaintiff was next seen by a nurse on October 8, 2020, complaining of head pain.  (*Id*. ¶ 37.)  Plaintiff's blood pressure was taken.  (*Id*. ¶ 38.)  In response to Plaintiff pointing behind his left ear as the source of his pain, the nurse checked Plaintiff's head and noted that he had no swelling or redness, no loss of vision or change in vision, and no dizziness.  (*Id*. ¶ 39.)  Plaintiff also had no nausea or vomiting.  (*Id*.)  Plaintiff was prescribed 650 milligrams of Tylenol for three days.  (*Id*. ¶ 40.)  Plaintiff was next seen by medical staff on October 15, 2020 for a previously scheduled routine EKG due to his hypertension.  (*Id*. ¶ 41.)

Plaintiff was next seen in the infirmary by a nurse on December 7, 2020, almost two months later, complaining of testicle pain.  (*Id*. ¶ 42.)  There were no recorded complaints of chest, neck, shoulder, hand, or head pain/headache.  (*Id*.)

Plaintiff testified that he did not receive any pain medication for his head until May 2022. (Shevlin Decl. Ex. A, at 14:2–17:15; 46:10–14.)  However, this testimony is directly contradicted by his Amended Complaint which indicates that he received pain medication the day he fell, (Am. Compl. ¶ 2), and his deposition testimony where he stated he was given aspirin when he put in for sick call, (Shevlin Decl. Ex. A, at 52:2–25).  Specifically, Plaintiff testified that he "put in for sick call five times. . . all I did for the five times, aspirin—they give me an aspirin" and that he asked for "pain medication," but was told he could not receive "pain medication" because the doctor would have to prescribe it.  (*Id*. at 52:23–53:4.)  Plaintiff further testified that he was given aspirin as opposed to ibuprofen—which required a prescription—but that the aspirin did not help him.  (*Id*. at 58:8–15.)  Plaintiff claims he was not given ibuprofen until he spoke with Judge McCarthy.  (*Id*. at 16:9–17:3; 58:16–59:5.)

Plaintiff additionally notes that he requested an MRI from Hinton by letter and in person. (*Id*. at 27:7–23.)

On or about September 28, 2020, Plaintiff filed Grievance SUL-0706-20 ("Grievance"), in which he alleged that he was not receiving appropriate medical care for complaints involving persistent headaches, dizziness, and pain in his left shoulder, neck, and left hand.  (Defs.' 56.1 ¶ 43.)  Because Plaintiff's Grievance pertained to medical issues, the Nurse Administrator, Hinton, was assigned to investigate the claims and to respond to them.  (*Id*. ¶ 44.)  On October 20, 2020, Hinton responded to the grievance by memorandum stating that "Inmate's concerns have been addressed.  He was seen 9/22, 9/24, 9/28, 10/8 and 10/15."  (*Id*. ¶ 45.)  In reaching this

conclusion, Hinton would have reviewed Plaintiff's medical record, including his September 11, 2020 x-ray, in order to formulate her response.  (*Id*. ¶ 46.)  Keyser denied the Grievance on or about October 28, 2020.  (*Id*. ¶ 47.)

Plaintiff states that he "still experience[s] and suffers from massive headaches, pressure existing behind both eye-balls, and dizz[]iness when lowering [his] head, or bending over to tie [his] shoe laces, or putting on a pair of socks, or footwear . . . [and] does suffer still and having constant difficulty doing daily chores, or standing for any lenght [sic] of time."  (Pl.'s Mem. 7.)

### B.  Procedural History

Plaintiff commenced the instant Action on June 7, 2021.  (*See* Compl. (Dkt. No. 2).) Plaintiff filed his Amended Complaint on November 8, 2021.  (*See* Am. Compl.)  Defendants filed the instant Motion for Summary Judgment on April 25, 2022.  (*See* Not. of Mot. (Dkt. No. 47); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 48).)  Plaintiff submitted his Opposition on February 13, 2023.  (*See* Mem. of Law for Reply to Mot. ("Pl.'s Mem.") (Dkt. No. 61).)[3]  Defendants replied on February 28, 2023.  (*See* Reply to Mot. ("Defs.' Reply Mem.") (Dkt. No. 62).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to

---

[3] The Court notes that while Plaintiff's motion is labeled as an opposition, Plaintiff also appears to be requesting summary judgment at some points in his motion.  (*See generally* Pl.'s Mem.)

award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848

F.2d at 344; *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).  Moreover, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vt. Teddy Bear Co*., 373 F.3d at 244; *see also Jackson v. Fed. Exp*., 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[ ]made in light of the opposing party's pro se status" (italics omitted)).  "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . .  are insufficient to overcome a motion for summary judgment." *Houston*, 27 F. Supp. 3d at 351 (alterations, italics, and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

    B.  Analysis

    Plaintiff asserts that following his fall on September 17, 2020, he suffered a host of medical problems including chronic pain in his head, left hand, neck, back, and chest.  (*See generally* Am. Compl.; Pl.'s Mem. 7.)  According to Plaintiff, he has been refused an MRI and a specialty visit, and was denied pain medication until May 2022.  (*See* Shevlin Decl. Ex. A, at 13:18–15:7; 58:8–15; Pl.'s Mem. 4.)  Because of the alleged deliberate indifference of the Defendants, Plaintiff argues he continues to suffer pain to this day, over two years after his September 2020 fall.  (Pl.'s Mem. 4.)

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners . . . .'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To state a claim of deliberate indifference, Plaintiff must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that Defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017) (citations omitted).

"The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted). In other words, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citations omitted). Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the [C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id*. at 280 (citation omitted). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the

existence of chronic and substantial pain.'" *Id*. (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. This means that Defendants must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation and quotation marks omitted)). A defendant's awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (citation and quotation marks omitted).

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. "A medical decision not to order an X-ray[ ] or like measures" "is a classic example of a matter for medical judgment" that "does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107; *see also Stephens v. Ruiz*, No. 20-CV-1450, 2021 WL 371578, at *4 (D. Conn. Feb. 3, 2021) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim" (citation omitted)). In this case, the evidence demonstrates that Plaintiff was repeatedly evaluated by medical staff, during which he was given neurological and other examinations and an x-ray, and

that it was ultimately determined that an MRI was not medically necessary.  (Defs.' 56.1 ¶¶ 6–40.)  For example, Plaintiff's medical records indicate he was examined by medical staff on September 10, 2020 (by both Buttles and Awaka), September 22, 2020 (by a nurse and then by Awaka and Korobkova), September 24, 2020, September 28, 2020 (by Awaka), and October 8, 2020.  (*Id*.)  During those examinations, medical staff conducted neurological examinations, checked Plaintiff's vital signs, and physically checked the areas he complained about, examinations all of which were determined to be normal.  (*Id*.)  And the x-ray of his left shoulder, arm, hand, and his head indicated that he did not suffer any fractures as a result of his fall.  (*Id*. ¶ 15.)  While Plaintiff may disagree on the date he fell and subsequently received treatment, he does not contest that he was seen repeatedly by medical professionals, received an x-ray, multiple physical examinations, and aspirin.  (*See generally* Shevlin Decl. Ex. A.)

Accordingly, Plaintiff clearly received medical treatment and the decision not to order an MRI or refer him to a specialist, which can only be described as a disagreement regarding proper treatment, cannot constitute deliberate indifference to medical needs.  *See Robbs v. McCrystal*, No. 20-CV-1584, 2023 WL 2526533, at *12 (D. Conn. Mar. 15, 2023) ("[M]edical decisions, such as whether to order x-rays, MRIs, or other diagnostic tests do not generally implicate the Eighth Amendment's prohibition against cruel and unusual punishment."); *Youmans v. City of N.Y.*, 14 F. Supp. 3d 357, 363–64 (S.D.N.Y. 2014) (holding that failure to provide an MRI or CT scan and a second opinion fails to satisfactorily plead deliberate indifference); *Gumbs v. Dynan*, No. 11-CV-857, 2012 WL 3705009, at *14 (E.D.N.Y. Aug. 26, 2012) ("[A] medical judgment is not deliberate indifference just because it is not the inmate's preferred course of treatment. Whether to order an MRI or similar diagnostic treatments is a classic example of a matter for medical judgment, and where the treatment provided is responsive to the prisoner's condition, . . .

14

the fact that a prisoner might prefer different treatment does not give rise to a Constitutional violation." (second alteration in original) (citation and quotation marks omitted)); *Ferrera v. Fisher*, No. 06-CV-1158, 2008 WL 4443920, at *14 (S.D.N.Y. Sept. 30, 2008) (holding no deliberate indifference where the plaintiff had not "provided evidentiary support for his conclusory statements that he is a good candidate for surgery, that additional specialists referrals were warranted or that the various tests performed and treatments prescribed did not constitute adequate treatment"); *Fulmore v. Mamis*, No. 00-CV-2831, 2001 WL 417119, at *8–9 & n. 26 (S.D.N.Y. Apr. 23, 2001) (holding that a physician's failure to order CAT scan reflected, "at most, . . . a difference in opinion as to [prisoner's] medical treatment rather than any deliberate indifference to [the prisoner's] medical needs"); *see also Smalls v. Wright,* 807 F. App'x 124, 126 (2d Cir. 2020) (summary order) (concluding that a defendant's "decisions not to order an MRI and not to refer [the plaintiff] to a specialist constitute matters of medical judgment that do not give rise to an Eighth Amendment violation"); *Riddick v. Maurer*, 730 F. App'x 34, 37–38 (2d Cir. 2018) (summary order) (affirming denial of injunctive relief based on the inmate-plaintiff's claims concerning denials of MRIs, x-rays, and a new mattress because they constituted "mere disagreements over treatment")*.*  Indeed, "[t]he fact that a prisoner might prefer different treatment does not give rise to an Eighth Amendment violation."  *Chance,* 143 F.3d at 703.

Additionally, Plaintiff's assertion that he was not given pain medication until May 2022 is conclusively belied by his medical records, which demonstrate that he was given an analgesic balm and was repeatedly given Tylenol and ibuprofen, and his own testimony which indicates he was provided aspirin.  (Defs.' 56.1 ¶¶ 8, 30, 40; Shevlin Decl. Ex. A, at 52:2–25.)  Plainly, "[t]hese records are fatal to Plaintiff's factual allegation."  *Johnson v. Kitt*, No. 15-CV-7823, 2021 WL 1105438, at *8 (S.D.N.Y. Mar. 23, 2021).  "When opposing parties tell two different

15

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The detailed and consistent story told by the medical records—"uncontroverted documentary evidence, made contemporaneous to the events[—]wholly undermines Plaintiff's unsupported contentions and is fatal to [his] . . . claim." *Todd v. N.Y.C. Health & Hosps. Corp.*, No. 16-CV-2124, 2021 WL 4463214, at *4 (E.D.N.Y. Sept. 29, 2021); *see also Vega v. Rell*, 611 F. App'x 22, 25–26 (2d Cir. 2015) (summary order) (affirming grant of summary judgment related to a prisoner's deliberate-indifference-to-medical-needs claim where the prisoner's account in his affidavit was "undercut" by "uncontroverted medical records"); *Jordan v. Fischer*, 773 F. Supp. 2d 255, 262 (N.D.N.Y. 2011) (granting summary judgment where the plaintiff's "allegations and the underlying record betray the merits of his deliberate indifference claim against [a defendant]"); *Headley v. Fisher*, No. 06-CV-6331, 2010 WL 2595091, at *4 (S.D.N.Y. June 28, 2010) (holding that "[c]ontemporaneous [l]ogbook entries eliminate[d] any genuine issue of material fact that [the plaintiff] was not deprived of opportunities to shower and go to recreation while under keep-lock status"); *Gaston v. Coughlin*, No. 98-CV-6016, 2005 WL 1177869, at *13 (W.D.N.Y. May 18, 2005) (holding that the plaintiff's "bald, conclusory statement[s]" that were contradicted by evidence in a prison's "[a]ctivity [l]og" were "insufficient to defeat summary judgment"). Moreover, Plaintiff has not made a "blanket denial of the accuracy of medical records," *Aouatif v. City of N.Y.*, No. 07-CV-1302, 2019 WL 2410450, at *8 (E.D.N.Y. May 31, 2019), *aff'd*, 811 F. App'x 711 (2d Cir. 2020) (summary order), nor does Plaintiff "speculat[e] that [Defendants] had somehow doctored [P]laintiff's medical records," *Farid v. Ellen*, No. 01-CV-8292, 2006 WL 59517, at *11 (S.D.N.Y. Jan. 11, 2006), *aff'd*, 593 F.3d 233 (2d Cir. 2010), even if such either

course of action is insufficient to withstand a motion for summary judgment, *see Aouatif*, 2019 WL 2410450, at *8; *Farid*, 2006 WL 59517, at *11.

Moreover, even taking Plaintiff's facts as true, namely that he was provided aspirin and not ibuprofen, "[t]he decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs." *Rush v. Fischer*, No. 09-CV-9918, 2011 WL 6747392, at *3 (S.D.N.Y. Dec. 23, 2011) (collecting cases). Accordingly, insofar as Plaintiff claims that he did not receive the pain medication of his choice, his claim cannot survive. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (holding prisoner's claim that Motrin medication was insufficient and that stronger pain medication was required for his wrist injuries did not state a deliberate indifference claim); *Neira v. Cnty. of Nassau,* No. 13-CV-07271, 2022 WL 4586045, at *18 (E.D.N.Y. Sept. 29, 2022) ("Plaintiff's claim that medical staff should have given him stronger medication than Tylenol and Motrin for his pain does not demonstrate that [medical] personnel were deliberately indifferent to his medical condition."); *Williams v. Williams*, No. 13-CV-3154, 2015 WL 568842, at *5 (S.D.N.Y. Feb. 11, 2015) (noting that "courts have repeatedly declined to find that a medical provider was deliberately indifferent to an inmate's medical needs" where a plaintiff challenges "the type and quantity of pain medication"); *Harris v. Westchester Cnty. Med. Ctr.*, No. 08-CV-1128, 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011) ("The failure to provide stronger pain medication does not constitute deliberate indifference."); *Wright v. Genovese*, 694 F. Supp. 2d 137, 160 (N.D.N.Y. 2010) ("Differences in opinions between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's 'serious' medical needs."); *Veloz v. New York*, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004) (holding that medical providers' decision not to prescribe stronger pain

medication than Tylenol to address prisoner's back condition did not state a claim for deliberate indifference).[4]

Accordingly, Plaintiff's deliberate indifference to medical needs claim cannot stand.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion is granted.[5]  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 47), enter judgment for Defendants, mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket, and close this case.

---

[4] Plaintiff additionally appears to be claiming that Hinton and Krom "did not want any staff being taken off their security posts, for a minor accident by the [P]laintiff."  (Pl.'s Mem. 8.) Plaintiff does not explain how this resulted in any deliberate indifference to his medical needs, namely any deprivation of medical care.  Plaintiff also claims the decisions made on the day of his slip and fall were not based on an assessment of his condition but instead "based on someone's failure to complete a form."  (Pl.'s Mem. 9.)  Plaintiff has not explained what form he refers to or how such a failure resulted in any deliberate indifference to his medical needs.

[5] The deliberate indifference to medical needs claims against the unserved Defendants Buttles and Awaka, which suffer from the same deficiencies, are dismissed as well.  *See Garcia v. City of N.Y.*, No. 15-CV-7470, 2017 WL 1169640, at *1 n.1 (S.D.N.Y. Mar. 28, 2017) ("Although Rojas and Larson have yet to be served, because Plaintiffs' claims against them are the same as the claims against Ovando and Smyth and suffer from the same deficiencies, the Court will treat the instant motion as if it were brought on behalf of all Defendants."); *Johnson v. N.Y.C.*, No. 12-CV-4379, 2013 WL 950870, at *3 (S.D.N.Y. Mar. 7, 2013) ("As the same conviction underlies plaintiff's claims against defendant Thomas Woods (who has not yet been served in this action), the Court dismisses the Complaint with respect to Woods *sua sponte.*" (emphasis in the original)); *Hamilton v. Broomfield*, No. 95-CV-3241, 1998 WL 17697, at *1 n.1 (S.D.N.Y. Jan. 20, 1998) (dismissing claims against unserved defendants because they were identical to claims against defendants who filed the motion to dismiss).

SO ORDERED.

Dated:   September 19, 2023
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

19